# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Anthony C. Ruff,
    Petitioner

vs                                Case No. 1:04cv14
                                    (Weber, S.J.; Black, M.J.)

Ernie Moore,[1]
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate currently in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed this action *pro se* for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts six grounds for relief. (Doc. 1).

This case has proceeded to final adjudication on a piecemeal basis. On March 23, 2005, the Court adopted a Report and Recommendation issued by the undersigned on February 10, 2005 to dismiss all but one of petitioner's claims for relief as time-barred under 28 U.S.C. § 2244(d) in response to a motion to dismiss filed by respondent. (*See* Docs. 6, 9, 16). At this juncture in the proceedings, only one claim alleged in Ground Five of the petition remains for final adjudication.

On February 10, 2005, respondent was ordered to file a return of writ responding to the remaining claim alleged in Ground Five. (Doc. 10). On March 21, 2005, in response to that Order, respondent filed an "Answer" with

---

[1] At the time he filed the petition, petitioner was incarcerated at the Warren Correctional Institution (WCI) and properly named WCI's Warden, Wanza Jackson, as respondent. However, it appears from the Court's docket records that petitioner was transferred on February 8, 2005 from WCI to the Lebanon Correctional Institution, where Ernie Moore is the Warden. Because Ernie Moore is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

accompanying exhibits. (Doc. 15). Respondent also has provided the Court with a copy of the guilty plea and sentencing hearing transcript in accordance with an order issued June 29, 2005 and has submitted a supplement to the "Answer," to which petitioner has filed a reply. (*See* Docs. 20, 22, 23, 26).[2] Therefore, it appears that petitioner's remaining claim for relief is now ripe for final ruling.

## Factual And Procedural Background

On July 15, 1996, petitioner was indicted by the Hamilton County, Ohio, grand jury on two counts of aggravated murder as defined in Ohio Rev. Code § 2903.01; one count of kidnapping as defined in Ohio Rev. Code § 2905.01(B) and two counts of aggravated arson as defined in Ohio Rev. Code § 2909.02(A). (Doc. 6, Ex. 1). On January 13, 1997, petitioner entered guilty pleas in the Hamilton County Court of Common Pleas to a reduced charge of involuntary manslaughter as defined in Ohio Rev. Code § 2903.04 and to one of the aggravated arson counts, in exchange for dismissal of the remaining counts. (*Id.,* Exs. 2-4). On that same date, petitioner was sentenced to consecutive sentences of ten (10) years for the involuntary manslaughter offense and five (5) years for the aggravated arson offense. (*Id.,* Ex. 4). It appears from the sentencing hearing transcript that this sentence was imposed pursuant to the parties' plea bargain agreement. (*See* Doc. 22, Tr. 9-10).

Petitioner did not pursue an appeal as of right from his conviction and sentence. Indeed, he took no action to challenge his conviction until nearly three and one-half years later, when on June 8, 2000, he filed a *pro se* motion to withdraw his guilty plea with the Hamilton County Common Pleas Court. (Doc. 6, Ex. 5). In the motion, petitioner claimed only that his guilty pleas "were not voluntarily made" because his trial counsel misled him into believing that a potential defense witness, Dr. Washington, had refused to testify at trial. (*Id.*). The motion was denied on June 13, 2000. (*Id.,* Ex. 6).[3]

---

[2]Petitioner filed a motion to strike respondent's supplement to the "Answer" (Doc. 25), which has been denied by Order issued this date.

[3]Petitioner appealed the trial court's decision to the Ohio Court of Appeals, First Appellate District, which *sua sponte* dismissed the appeal on April 26, 2001 based on petitioner's failure to comply with certain procedural requirements. (*See* Doc. 6, Ex. 8). Apparently, petitioner did not attempt a further appeal to the Supreme Court of Ohio in that matter. (*See* Doc. 15, Brief, p. 3).

Next, on August 9, 2001, petitioner filed a *pro se* petition to vacate or set aside sentence pursuant to Ohio Rev. Code § 2953.21 with the Hamilton County Common Pleas Court. (*Id.,* Ex. 9). In this state post-conviction petition, petitioner stated as a factual matter that his counsel did not file an appeal from the judgment of conviction to the Court of Appeals and then went on to allege the following claims of constitutional error: (1) the "[p]rosecution presented defense with a constitutionally deficient indictment;" (2) his trial counsel was ineffective by failing to object to the "deficient indictment" or "to present any adversarial challenge to said charges;" (3) the prosecutor vindictively "omitted Victim's Mental Medical Records which could prove Petitioner's Inno[ce]nce;" and (4) the trial judge engaged in misconduct by allowing "the Prosecutor to present a theory that was not brought up to the Grand Jury." (*Id.*). The petition was denied on August 10, 2001. (*Id.,* Ex. 10).[4]

Thereafter, on September 24, 2001, petitioner filed a motion for leave to appeal the trial court's August 10, 2001 judgment denying post-conviction relief to the Ohio Court of Appeals, First Appellate District. In an attached affidavit, petitioner averred that he had failed to perfect a timely appeal as of right because when he asked his trial counsel to file an appeal after his conviction, he was told that he had waived his right of appeal by pleading guilty; as a lay person, he thought only attorneys could file direct appeals; and he had only recently learned within the "last week" that he could file a motion for delayed appeal under Ohio R. App. P. 5(A). (*Id.,* Ex. 23). On October 26, 2001, the Court of Appeals overruled petitioner's motion for leave to appeal, stating that "App. R. 5 only applies to criminal cases and post conviction is a civil proceeding; further, the appellant has failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 25).[5]

On September 24, 2001, petitioner also filed for the first time a notice of appeal and motion for leave to appeal the January 13, 1997 judgment of conviction

---

[4]Petitioner apparently filed a motion with the trial court for reconsideration of this decision, which was denied on August 27, 2001. (Doc. 6, Exs. 11-12).

[5]Respondent states that petitioner filed an untimely motion for reconsideration of this decision, which was denied by the Ohio Court of Appeals on December 27, 2001. (Doc. 15, Brief, p. 6; *see also* Doc. 6, Exs. 26, 27). Apparently, petitioner did not attempt a further appeal to the Supreme Court of Ohio in the state post-conviction proceeding. (*See* Doc. 15, Brief, p. 6).

3

and sentence to the Ohio Court of Appeals, First Appellate District. (*Id.,* Exs. 13-14). In an attached affidavit, petitioner provided the same reasons for his delay in filing as he had presented in his motion for leave to appeal the denial of his state post-conviction petition. (*Id.,* Ex. 14). On October 26, 2001, the Court of Appeals overruled petitioner's motion for leave to appeal on the ground that "appellant has failed to provide sufficient reasons for failure to perfect an appeal as of right." (Doc. 15, Ex. 1). On December 12, 2001, petitioner filed an untimely motion for reconsideration, which was denied on December 27, 2001. (Doc. 6, Exs. 16-17).

Over five months later, on June 5, 2002, petitioner filed a *pro se* application for delayed reopening of his direct appeal as of right pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 18). In this application, petitioner asserted among other claims of error that when he told his trial counsel that he would like to appeal his conviction, "Counsel informed [him] that he . . . had no Right to Appeal." (*Id.,* p. III). He also generally alleged that his "Trial/Appellate Counsel fail[ed] to represent [him] adequately during . . . ALL STAGES of Appeal process." (*Id.*).

On September 30, 2002, the Ohio Court of Appeals overruled petitioner's reopening application. (*Id.,* Ex. 21). The court reasoned that Ohio R. App. P. 26(B) "provides a means for challenging counsel's performance in prosecuting a direct appeal from a criminal conviction. It does not, as the appellant would have it, serve as a substitute for a timely filed direct appeal or prescribe a method for securing 'reconsider[ation]' by an appellate court of its decision denying an appellant leave to file a delayed appeal." (*Id.*).

Petitioner next filed on November 14, 2002 a notice of appeal and memorandum in support of jurisdiction in the Supreme Court of Ohio from the Court of Appeals' September 30, 2002 entry overruling his application for delayed reopening. (*Id.,* Exs. 28-29). Petitioner presented the following three propositions of law for the court's consideration:

> 1. Appellate Rule 26(B) is unconstitutional as applied in Ohio's Due Process and Equal Protection Laws because it does not define what constitutes "GOOD CAUSE" for filing after the ninety (90) day requirement.
>
> 2. Appellant's Constitution[al] Right under . . . Sixth and Fourteenth

4

>Amendments of the United States Constitution are violated when Court of Appeals illegally rendered a decision without the presence of an Appellate Counsel to represent him. . . .
>
>3. Whether Appellant's Constitutional Right under . . . Sixth and Fourteenth Amendments of the United States Constitution[] are violated when Appellant's Appellate Counsel failed to represent Appellant adequately when Appellate Counsel failed to Challenge/Raise/Argue obvious and reversible critical issues for review that would prove Appellant's Innocence.

(*Id.,* Ex. 29). On January 15, 2003, the Supreme Court of Ohio dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 31).

Four months later, in a last attempt to obtain relief in the state courts, petitioner filed a second *pro se* petition for post-conviction relief on May 14, 2003 in the Hamilton County Common Pleas Court. (*Id.,* Ex. 32). On June 2, 2003, the court declined "to entertain [the] successive petition to vacate." (*Id.,* Ex. 34). Respondent states that "[n]o further appeal was taken from this decision." (Doc. 15, Brief, p. 7).

The instant petition, deemed "filed" on January 7, 2004 (*see* Doc. 9, p. 4; Doc. 16), contains the following ground for relief, which is the only one that remains pending before the Court for consideration:

**Ground Five:** Denial of Right of Appeal.

(Doc. 1, p. 6 & Attached Memorandum, pp. 6-7). Petitioner specifically contends that Ohio R. App. P. 5 and Ohio R. App. P. 26(B) are "unconstitutional as applied in Ohio" because they "DO NOT define what constitutes '**GOOD CAUSE**'" and allow the state appellate judges "to incorporate their own personal view/meaning (guidelines) of '**GOOD CAUSE**'." (*Id.,* Attached Memorandum, p. 7) (emphasis in original).

Although respondent's motion to dismiss this claim for relief on statute of limitations grounds previously was denied (*see* Doc. 9, pp. 10-12; Doc. 16), respondent reasserts a statute of limitations defense in the supplement to the "Answer." (Doc. 23). Respondent also contends in response to petitioner's

5

allegations that petitioner has waived the claim alleged in Ground Five of the petition due to his procedural defaults in the state courts and that, in any event, the claim lacks merit and is "**noncognizable** in habeas." (Doc. 15, pp. 19-26) (emphasis in original).

## OPINION

### A. The Court Assumes That Petitioner's Claim Alleged In Ground Five That He Was Denied His Right Of Appeal Is Not Time-Barred

In Ground Five of the petition, petitioner essentially contends that he was deprived of his constitutional right of appeal when, despite his showing of "good cause," the Ohio Court of Appeals denied his motion for delayed appeal under Ohio R. App. P. 5 and his application for delayed reopening of his appeal under Ohio R. App. P. 26(B).

Respondent previously moved to dismiss this claim, along with petitioner's other claims for relief, on the ground that it is barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). (Doc. 6). In ruling on the motion to dismiss, the Court concluded that unlike petitioner's other claims, which are time-barred under the one-year statute of limitations set forth in § 2244(d)(1)(A), the claim alleged in Ground Five is governed by a different limitations provision set forth in § 2244(d)(1)(D), because "the facts giving rise to this claim did not occur and thus were not discoverable until, at the very earliest, October 26, 2001 when the Ohio Court of Appeals denied petitioner's motion for delayed appeal from the judgment of conviction and sentence." (Doc. 9, p. 10; Doc. 16). Taking into account the tolling provision set forth in 28 U.S.C. § 2244(d)(2), the Court next determined that the statute was tolled and did not commence running until February 11, 2002, was tolled again from June 5, 2002 until April 15, 2003, and was tolled a third time from May 14, 2003 until July 2, 2003. (*Id.*, p. 11). Based on these tolling calculations, the Court found that there were 45 days remaining in the limitations period when petitioner filed the instant action and that, therefore, the claim alleged in Ground Five is not time-barred . (*Id.*).

In his supplement to the Answer, respondent reasserts the statute of limitations defense with respect to the claim alleged in Ground Five. (Doc. 23).

Respondent argues that under the authority of the Supreme Court's recent decision in *Johnson v. United States,* 544 U.S. 295, 125 S.Ct. 1571 (2005), the one-year limitations period commenced running under 28 U.S.C. § 2244(d)(1)(A) when petitioner's conviction became "final" by the conclusion of direct review or the expiration of time for seeking such review in the absence of any showing that petitioner acted diligently in challenging his conviction. (Doc. 23, pp. 2-4).

In *Johnson,* the Supreme Court considered the analogous statute of limitations provision governing prisoners collaterally challenging their federal sentences, which is set forth in 28 U.S.C. § 2255, ¶6. In that case, the Court was faced with the question as to when the one-year limitations period begins to run on a claim challenging a federal sentence based on the ground that a state sentence used to enhance that sentence has since been vacated. The Court held that the one-year statute of limitations begins to run under § 2255, ¶6(4), a provision directly analogous to § 2244(d)(1)(D), when the petitioner receives notice of the order vacating the prior state conviction, "provided that he has sought it with due diligence in state courts, after entry of judgment in the federal case with the enhanced sentence." *Johnson,* 125 S.Ct. at 1575.

In so ruling, the Court agreed with petitioner's argument that notice of the state order eliminating the predicate required for enhancement of the challenged federal sentence, "which is almost always necessary and always sufficient for relief," is a matter of "fact," the discovery of which triggers the limitations period under § 2255, ¶6(4). *Id.* at 1579. However, the Court pointed out a "minor" anomaly in petitioner's position to the extent that "[i]t is strange to say that an order vacating a conviction has been 'discovered,' the term used by paragraph four, and stranger still to speak about the date on which it could have been discovered with due diligence, when the fact happens to be the outcome of a proceeding in which the § 2255 petitioner was the moving party." *Id.* at 1580.

Most importantly, the Court further found that there was a "more serious problem" with petitioner's position that his § 2255 petition "is timely under paragraph four as long as he brings it within a year of learning he succeeded in attacking the prior conviction, no matter how long he may have slumbered before starting the successful proceeding." *Id.* The Court reasoned:

> Of course it may well be that [petitioner] took his time because his basic sentence had years to run before the period of enhancement

7

>began. But, letting a petitioner wait for as long as the enhancement makes no difference to his actual imprisonment, while the predicate conviction grows increasingly stale and the federal outcome is subject to question, is certainly at odds with the provision in paragraph four that the one year starts running when the operative fact "could have been discovered through the exercise of due diligence." And by maximizing the time that judgments are open to question, a rule allowing that kind of delay would thwart one of AEDPA's [the Antiterrorism and Effective Death Penalty Act of 1996] principal purposes, *Duncan v. Walker,* 533 U.S. [167, 179 (2001)], *Woodford v. Garceau,* 538 U.S. 202, 206 . . . (2003), [of promoting "finality" by "reduc[ing] delays in the execution of state and federal criminal convictions and sentences ."]

*Id.*

Although the Court concluded that neither of its concerns was sufficiently serious "to justify rejecting [petitioner's] basic argument that notice of the order vacating the predicate conviction is the event that starts the one year running," it was still left "with the question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial fact of the vacatur order that he himself seeks." *Id.* The Court stated:

>The answer is that diligence can be shown by prompt action on the part of the petitioner as soon as he is in the position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence. The important thing is to identify a particular time when the course of the later federal prosecution clearly shows that diligence is in order.

*Id.* at 1580-81. That point in time, which was chosen as best reflecting "the statutory text and its underlying concerns," was determined to be the date of entry of judgment in the federal criminal case. *Id.* at 1581.

Based on this line of reasoning, the Court concluded that the one-year limitations period would have run under § 2255, ¶6(4), from the date the petitioner received notice of the state vacatur order if petitioner had acted diligently in obtaining that order after entry of judgment in the federal criminal case. *Id.* at

8

1582.  However, because the petitioner had delayed more than three years after entry of judgment in the federal case before filing his state habeas petition attacking the predicate for enhancement, the Court found that petitioner had not acted diligently in challenging his state conviction.  *Id.*  Because petitioner had not exercised due diligence, the Court concluded that the limitations period set forth in § 2255, ¶6(4), was "unavailable" and that the petition was properly dismissed on the ground that it was untimely-filed.  *Id.*

This case is analogous to *Johnson* to the extent petitioner alleges that notice of the Ohio Court of Appeals' decisions denying his motion for delayed appeal and application for delayed reopening of his appeal form the basis for his claim for relief and are matters of fact, the discovery of which trigger the applicability of the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1)(D).  The case is further analogous to *Johnson* to the extent that the "good cause" argument underlying petitioner's claim for relief is based on alleged errors and mis-perceptions that occurred years earlier, when the time for filing an appeal of right had not yet expired, which petitioner failed to diligently pursue in the state courts.

In this case, petitioner did nothing to challenge his conviction or sentence until three and one-half years after the entry of the trial court's judgment on January 13, 1997.  Moreover, although he unsuccessfully sought to withdraw his guilty plea in June 2000 and to obtain post-conviction relief from the trial court in August 2001, petitioner did not raise any "good cause" argument in support of a claim that he was denied his right of appeal and thus entitled to appellate review of his conviction and sentence until September 24, 200l, when he filed his motion for leave to file a delayed appeal from the judgment of conviction and sentence.

Although petitioner delayed four and one-half years in filing his motion for delayed appeal, in which he raised his "good cause" argument, there is evidence in the record indicating that petitioner was aware of his right of appeal at the time he entered his guilty pleas.  As respondent has pointed out in his supplement to the "Answer" (Doc. 23, p. 4), the guilty plea form entered on the record and executed by petitioner expressly provided in pertinent part:

> . . . .I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within 30 days of my sentence.

9

****

> I have read this form and I knowingly, voluntarily, and intelligently enter this guilty plea.

(Doc. 6, Ex. 3). In addition, in response to the court's questioning at the plea hearing, petitioner affirmed that he could read and had read, understood and signed the written plea agreement of his "own free will." (Doc. 22).

In his reply to respondent's supplemental answer (Doc. 26), petitioner points out that he was not informed by the trial court of his right of appeal when he was sentenced. (*See* Doc. 22). Petitioner also contends that he did not read the plea agreement signed by him and that, in any event, the plea agreement was vague and could be "misinterpreted" as to the issues he could appeal. In light of petitioner's own testimony at the plea hearing that he had read and understood the plea agreement signed by him, the Court gives little credence to petitioner's self-serving statement to the contrary made for the first time in his reply brief filed in July 2005. *Cf. State v. Reed,* No. 04 MA 236, 2005 WL 1385711, at *3 (Ohio Ct. App. June 6, 2005) (unpublished) (under the authority of *State v. Kapper,* 448 N.E.2d 823 (Ohio), *cert. denied,* 464 U.S. 856 (1983), the court stated that "if the record demonstrates compliance with Crim.R. 11, the defendant's own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review which shows the plea was voluntary"). Moreover, it appears that the plea agreement informed petitioner of his appellate rights with respect to his guilty pleas in accordance with Ohio law. *See* Ohio R. Crim. P. 32(B)(2); Ohio Rev. Code § 2953.08(D).[6]

---

[6] *See also State v. Poole,* No. 05AP-1266, 2006 WL 158618, at *2 (Ohio Ct. App. Jan. 19, 2006) (unpublished); *State v. White,* No. 21741, 2003 WL 22451372, at *1 (Ohio Ct. App. Oct. 6, 2003) (unpublished) (holding that Court of Appeals was precluded by Ohio Rev. Code § 2953.08(D) from reviewing the sentence imposed after entry of a guilty plea that was voluntarily made with full understanding of the consequences, which fell within the statutory maximum and was recommended jointly by the defense and prosecution, and that the trial court, therefore, was not required to advise the defendant of any right to appeal his sentence pursuant to Ohio R. Crim. P. 32(B)); *State v. Strickland,* No. 21554, 2003 WL 21448349, at *1 (Ohio Ct. App. May 22, 2003) (unpublished) ("After entering a guilty plea, a defendant has no right to an appeal from the *conviction*; however, a defendant may have a right to appeal the *sentence* pursuant to R.C. 2953.08.") (emphasis in original); *cf. State v. Borchers,* 655 N.E.2d 225, 229 (Ohio Ct. App. 1995).

To the extent the sentencing judge also should have advised petitioner of his appellate rights on the record ,and to the extent petitioner could have misinterpreted the notice of his "limited appellate rights" that was set forth in the executed plea form, petitioner nevertheless has not provided an adequate explanation for his three and one-half year delay in bringing any challenge to his conviction or sentence in the state courts, or his delay of four and one-half years in pursuing a delayed appeal. Therefore, a strong argument can be made that under the authority of *Johnson*, petitioner did not exercise the requisite due diligence under § 2244(d)(1)(D) to support this Court's previous determination that the statute of limitations did not commence running until after the Ohio Court of Appeals denied his motion for delayed appeal in October 2001 (*see* Doc. 9, p. 11; Doc. 16).

Despite these serious concerns, the undersigned assumes, without deciding, that the claim alleged in Ground Five of the petition is not time-barred. In a case decided after *Johnson*, which is directly on point to the case-at-hand, the Sixth Circuit determined, as this Court previously did, that the statute of limitations did not commence running on petitioner's claim that he was denied due process by the Ohio Court of Appeals' denial of his motion for delayed appeal until the time for appealing that ruling had expired. *See DiCenzi v. Rose,* 419 F.3d 493, 496-97 (6th Cir. 2005). The Sixth Circuit did not consider *Johnson* in reaching its decision. The court suggested, however, that petitioner's separate claims that he was denied due process as a result of both his counsel's and the trial court's failure to inform him of his appeal rights could be deemed time-barred under § 2244(d)(1)(D), if determined on remand that petitioner had not acted with due diligence in discovering his right of appeal. *Id.* at 497-500. In light of the Sixth Circuit's decision in *DiCenzi,* which also involved "long periods of time during which [the petitioner] took no action" in state court to challenge his conviction, *see id.* at 500, the undersigned concludes out of an abundance of caution that it should be assumed that the claim alleged in Ground Five of the petition is not time-barred.

**B.  Petitioner Is Not Entitled To Relief Because To The Extent His Claim Stemming From The Denial Of His Motions For Delayed Appeal and Reopening Of His Appeal Is Cognizable In This Proceeding, It Is Waived**

In Ground Five of the petition, petitioner generally challenges the constitutionality of Ohio R. App. P. 5's and Ohio R. App. 26(B)'s "good cause"

requirement for allowing delayed appeals and delayed reopening applications in the Ohio Court of Appeals. He also contends he was denied his right of appeal as a result of the application of that standard to him.

As an initial matter, the Court on federal habeas corpus review has jurisdiction only to address challenges to a petitioner's state conviction on the ground that petitioner's confinement violates the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2254(a); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Pulley v. Harris,* 465 U.S. 37, 41 (1984). It is well-settled by Supreme Court precedent that an appellant challenging his state criminal conviction is entitled to federal due process protection, including the right to effective assistance of counsel, when the state provides a first appeal as of right. *See, e.g., Evitts v. Lucey,* 469 U.S. 387, 392-93 (1985). However, these constitutional protections do not extend beyond the first appeal as of right to subsequent state discretionary appeals or collateral review. *See Coleman v. Thompson,* 501 U.S. 722, 755-57 (1991) (relying on *Ross v. Moffitt,* 417 U.S. 600, 616 (1974), and *Pennsylvania v. Finley,* 481 U.S. 551, 556 (1987)).

In Ohio, a state reopening application under Ohio R. App. 26(B) is considered a "collateral matter rather than part of direct review," to which constitutional protections do not extend. *Lopez v. Wilson,* 426 F.3d 339, 351-53 (6th Cir. 2005) (en banc), *petition for cert. filed,* No. 05-8475 (U.S. Dec. 30, 2005); *see also Morgan v. Eads,* 818 N.E.2d 1157 (Ohio 2004). In addition, in contrast to an appeal as of right under Ohio R. App. 4(A), which is protected by the Due Process Clause, a delayed appeal under Ohio R. App. P. 5(A) is a discretionary matter requiring leave of court before the appeal is allowed. Therefore, petitioner's claim generally challenging the "good cause" standard for allowing delayed reopening applications and delayed appeals under Ohio R. App. P. 26(B) and Ohio R. App. 5 does not trigger constitutional concerns. *Cf. Mapson v. Russell,* 869 F.2d 1491 (table), No. 88-3959, 1989 WL 16211, at **1 (6th Cir. Feb. 23, 1989) (unpublished) (affirming denial of petition alleging ineffective assistance of post-conviction appellate counsel as "not cognizable in federal habeas corpus," because "[t]here is no right to counsel that arises under the sixth amendment in a discretionary appeal from a judgment of conviction").[7]

---

[7]*See also Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (writ of habeas corpus is not the proper means by which prisoners may challenge errors or deficiencies in state post-conviction proceedings, because the claims address collateral matters and not the underlying

Petitioner's claim is cognizable only to the extent he contends that the Ohio appellate court's application of the "good cause" standard to him under those rules effectively deprived him of his constitutionally-protected right of appeal. *Cf. Wilburn v. Houk,* No. 1:02CV860, 2005 WL 1198774, at *12 (S.D. Ohio Apr. 13, 2005) (Hogan, M.J.) (stating in a Report and Recommendation later adopted as an order by the district judge that "a petitioner is denied due process of law when the state trial court and counsel fail to inform him that he has a right to an appeal after a guilty plea, he is otherwise unaware of that right, and the state court denies him a delayed appeal").[8]

In this case, petitioner's application for delayed reopening of the appeal was denied because he had not perfected an appeal that could be reopened under Ohio R. App. P. 26(B). (*See* Doc. 6, Ex. 21). Contrary to petitioner's contention, the court did not consider any arguments asserted by petitioner as "cause" for his untimely filing of the reopening application, which allegedly stemmed from his trial counsel's erroneous advice regarding his right to appeal his guilty plea. Rather, the Ohio Court of Appeals properly recognized that a Rule 26(B) application could not be used as a substitute for a direct appeal under Ohio R. App. P. 4(A) or to circumvent the court's previous decision denying petitioner leave to file a delayed appeal under Ohio R. App. P. 5. Therefore, petitioner's claim must fail to the extent he contends the Ohio Court of Appeals' denial of his reopening application implicates constitutional concerns.

Petitioner's constitutional claim stemming from the Ohio Court of Appeals'

---

conviction giving rise to the prisoner's incarceration), *cert. denied,* 535 U.S. 940 (2002); *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986) (same); *Johnson v. Collins,* 145 F.3d 1331 (table), No. 96-3513, 1998 WL 228029, at **1 (6th Cir. Apr. 27, 1998) (unpublished) (same).

[8]*See also Wolfe v. Randle,* 267 F.Supp.2d 743, 747-49 (S.D. Ohio 2003) (Spiegel, J.). *But cf. Johnson v. Jordan,* No. CIV-05-73-T, 2005 WL 1654042 (W.D. Okla. July 13, 2005) (unpublished) (rejecting state prisoner's attempt on habeas review to challenge the validity of his prior felony convictions used to enhance his sentence by arguing he was not fully informed of his right to appeal in the prior cases, because neither the trial judge nor his counsel had a constitutional duty to inform him of his right to appeal following guilty pleas in those cases) (citing and quoting *Carthen v. Workman,* 121 Fed.Appx. 344, 347 (10th Cir. Feb. 1, 2005) (not published in Federal Reporter), which in turn cited *Laycock v. New Mexico,* 880 F.2d 1184, 1187-88 (10th Cir. 1989), and *Crow v. United States,* 397 F.2d 284, 285 (10th Cir. 1968)).

13

denial of his motion for delayed appeal also must fail, because petitioner has waived the claim due to his procedural default in the state courts.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999).

If petitioner fails to fairly present his claims through the requisite of levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default because he never appealed the Ohio Court of Appeals' ruling on his delayed appeal motion to the Supreme Court of Ohio. Instead, over five months after he was denied leave to appeal by the Ohio Court of Appeals, petitioner attempted by other means to obtain an appeal in the state courts by filing the delayed reopening application discussed

14

above, *see supra* p. 13. On appeal to the Supreme Court of Ohio from the denial of his delayed reopening application, petitioner argued only that Ohio R. App. P. 26(B)'s "good cause" requirement was unconstitutional as applied to him. (*See* Doc. 6, Ex. 29). Petitioner did not raise any constitutional challenge with respect to Ohio R. App. P. 5, nor could he properly do so on appeal from the denial of his Rule 26(B) reopening application.

Because petitioner thus has procedurally-defaulted his constitutional claim stemming from the denial of his Ohio R. App. P. 5 motion for delayed appeal, this Court concludes that he has waived such claim unless he can show cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification for his failure to appeal the denial of his motion for delayed appeal under Ohio R. App. P. 5(A) to the Supreme Court of Ohio. Moreover, he has not demonstrated that failure to consider the claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent" of the involuntary manslaughter and aggravated arson offenses. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).[9]

Accordingly, in sum, the Court concludes that petitioner is not entitled to habeas corpus relief based on the remaining claim alleged in Ground Five of the petition. To the extent petitioner has alleged a cognizable constitutional claim stemming from the denial of his motion for delayed appeal by the Ohio Court of Appeals, such claim is waived due to petitioner's procedural default in the state courts.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's remaining claim for habeas corpus relief, which is alleged in

---

[9] Petitioner's "actual innocence" argument has already been rejected by the Court in ruling on respondent's motion to dismiss. (*See* Doc. 9, pp. 9-10; Doc. 16).

15

Ground Five of the petition brought pursuant to 28 U.S.C. § 2254 (*see* Doc. 1, p. 6), be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Five of the petition to the extent it was addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claim. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Also, a certificate of appealability should not issue to the extent the claim was dismissed with prejudice on procedural waiver grounds, because under the first prong of the applicable two-part standard established in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[10]

However, pursuant to the undersigned's Report and Recommendation entered February 8, 2005 (*see* Doc. 9, p. 12, ¶2), a certificate of appealability should issue with respect to the Order dismissing Grounds One through Four and Six with prejudice on procedural statute of limitations grounds, because under *Slack,* 529 U.S. at 484-85, "jurists of reason would find it debatable whether this Court is correct in its procedural ruling" and whether these grounds for relief state "viable claim[s] of the denial of a constitutional right" or are "adequate to deserve encouragement to proceed further," *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that although an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," an appeal of the March 23, 2005 Order adopting the undersigned's February 8, 2005 Report and Recommendation to dismiss Grounds One through Four and Six of the petition as time-barred would be taken in "good faith." Therefore, it is RECOMMENDED that the Court GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

---

[10]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in Ground Five of the petition. *See Slack,* 529 U.S. at 484.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).



Date:  2/16/06                              s/Timothy S. Black
     cbc                              Timothy S. Black
                                                                 United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\04-14denypet.sol-delapp.applrt-waiv.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Anthony C. Ruff,
    Petitioner,

                                            Case No. 1:04cv14
    v.                                    (Weber, S.J.; Black, M.J.)

Ernie Moore,
    Respondent.

## NOTICE

    Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).